**RIBBENS INTERNATIONAL, S.A. de C.V., a Mexican corporation, Plaintiff,**

v.

**TRANSPORT INTERNATIONAL POOL, INC., a Pennsylvania corporation, dba GE Capital Modular Space, Inc., Defendant.**

Transport International Pool, Inc., a Pennsylvania corporation, dba GE Capital Modular Space, Counter-claimant,

v.

Ribbens International, S.A. de C.V., a Mexican corporation, Counter-defendant.

**No. ED CV 94–23 RT(VAPx).**

United States District Court, C.D. California.

April 14, 1999.

James Attridge, Shawn, Mann & Steinfeld, L.L.P., San Francisco, CA, Samuel T. Rees, Daar & Newman, Los Angeles, CA, for plaintiff and counter–defendant.

Barbara A. Reeves, Paul, Hastings, Janofsky & Walker, L.L.P., Los Angeles, CA, James F. Elliott, Irell & Manella, L.L.P., Los Angeles, CA, for defendants and counter–claimant.

PROCEEDINGS: ORDER DENYING DEFENDANT TRANSPORT INTERNATIONAL POOL, INC.'S EX PARTE APPLICATION FOR ORDER QUASHING SERVICE OF NOTICE OF LEVY, MEMORANDUM OF GARNISHEE, AND WRIT OF EXECUTION ON BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY.

TIMLIN, District Judge.

The Court, the Honorable Robert J. Timlin, has read and considered defendant/counterclaimant Transport International Pool, Inc. (TIP)'s ex parte application to quash service of notice of levy, memorandum of garnishee, and writ of execution (application), plaintiff Ribbens International, S.A. de C.V. (Ribbens International)'s opposition thereto, and TIP's reply. The application will be denied.

On October 30, 1998, a jury in this Court found defendant Transport International Pool, Inc. (TIP) liable for breach of contract to plaintiff Ribbens International, S.A. de C.V. (Ribbens International) and awarded Ribbens International net damages of $351,000. On January 12, 1999, the Court entered judgment against TIP in the amount of $477,888.22, which figure includes prejudgment interest.

On March 5, 1999, Ribbens International served a notice of levy, writ of execution and a memorandum of garnishee on third party Burlington Northern and Santa Fe Railway Company (Burlington Northern), in an attempt to execute judgment by collecting funds owed by Burlington Northern to TIP.

TIP now seeks to quash the notice of levy, writ of execution and memorandum of garnishee served by Ribbens International upon Burlington Northern. TIP contends (1) that service of these documents on Burlington Northern was defective because it was effected by a Los Angeles Police Department officer who was not authorized under governing law to effect such service, and (2) that the writ of execution itself is defective because it contains an erroneous daily interest figure.

Ribbens International opposes the application, contending (1) that TIP does not have standing to assert that the service of these documents on third party Burlington Northern was defective, and (2) that the notice of levy and related documents were properly served under governing law. The Court agrees with Ribbens International's first ground of opposition and, therefore, need not at this time address the legal propriety of the challenged service. TIP does not have standing to object to the method employed by Ribbens International in serving the notice of levy, writ of execution, and memorandum of garnishee on Burlington Northern.

Although TIP does have a concrete interest in the funds potentially subject to levy, in the sense that it claims those funds as accounts receivable and would be arguably injured if the funds were somehow "wrongfully" paid to Ribbens Internation-

al, TIP does not by the instant application question the sufficiency of the writ of execution itself, except for the inclusion of an incorrect daily interest figure, nor does it challenge the underlying money judgment. Similarly, TIP does not assert that the funds allegedly held by Burlington Northern are somehow exempt from levy, nor does it in any way challenge the substance of the proposed garnishment. Rather, TIP brings only a technical challenge to the method of service employed by Ribbens International in serving the above listed documents on Burlington Northern.

█ In the Court's view, any defect in the method of service employed here threatens only the rights of the served party, Burlington Northern. Accordingly, TIP lacks standing to object to the method of service employed. *Cf. United States v. Tomison*, 969 F.Supp. 587, 596 (E.D.Cal. 1997) (Government lacks standing to move to quash subpoena served on third party as "unreasonable or oppressive" because "the government lacks the sine qua non of standing, an injury in fact relative to th[e] grounds [for the proposed challenge]."); *United States v. Evans*, 574 F.2d 1287, 1288 (5th Cir.1978) ("Evans lacks standing to object that records admitted at his trial were obtained from his employer through an administrative summons rather than by subpoena or search warrant."). The rules of service, at least under these circumstances, are designed to protect the served party's rights and interests and any defect in service must be complained of by the served party, or not at all. *See United States v. Viltrakis*, 108 F.3d 1159, 1160–61 (9th Cir.1997) (collecting decisions that "turn on the principle that the person served with process is the proper party to allege error."); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Col.1997) (defendant lacks standing to move to quash third-party subpoena on grounds of defective service).

█ Although in certain circumstances a party who satisfies the strictures of Article III of the United States Constitution with respect to a given case or controversy will be able to litigate the rights of a third party with respect to that case, under prudential standing guidelines such "third party" standing is permissible only " 'where there [exists] some hindrance to the third party's ability to protect his or her own interests.' " *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir.1994) (quoting *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991)). *See also Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 489 (9th Cir.1996) (no standing to assert a third party's rights unless there exists a "genuine obstacle" to the third party's asserting its own interests, and "a simple lack of motivation does not constitute a 'genuine obstacle' to asserting an interest). No showing has been made here that there is any obstacle to Burlington Northern's asserting its own rights, should it so desire." *See id.* at 488 (noting that one purpose of the prudential standing rule barring assertion of third party rights is "to avoid adjudicating rights a third party may not wish to assert").[1]

█ Consequently, TIP lacks standing to challenge by the instant application the method of service employed by Ribbens International in serving the notice of levy, writ of execution and memorandum of garnishee on Burlington Northern.[2]

1. TIP's sole authority for its claim of standing is *County of Alameda v. State Board of Control*, 14 Cal.App.4th 1096, 18 Cal.Rptr.2d 487 (1993). In that case, the Court of Appeal held that neither the County of Alameda, a member of its board of supervisors in his official capacity, nor the board member in his County taxpayer capacity had standing to assert the rights of indigent crime victims to receive certain state funds arguably earmarked for those victims. The Court fails to see how this case supports TIP's claim of standing, particularly in light of the fact that the *County of Alameda* plaintiffs lacked standing despite their substantial financial stake in the outcome of that litigation.

2. The Court is aware that the district court in *United States v. Pauly*, 725 F.Supp. 923

■ TIP does have standing to argue that the writ of execution itself is defective, as that document sets (by reference to the underlying judgment) the amount of TIP's property subject to execution by Ribbens International. The writ of execution states that the judgment owed by TIP to Ribbens International is $477,888.72 plus 10% interest per annum. These figures are correct. The writ incorrectly states, however, that the 10% per annum interest amount totals $4,975.28 per day. The correct per day interest figure is $130.93. This defect, TIP contends, "lends further support for the need to quash the Notice of Levy." Ex Parte Application of [TIP] for Order Quashing Service of Notice of Levy, Memorandum of Garnishee, and Writ of Execution on Burlington Northern and Santa Fe Railway Company at 13. The Court disagrees.

■ Initially, the notice of levy does not repeat the error contained in the writ of execution, but, rather, includes the correct per day interest figure of $130.93. Furthermore, the clerical error contained in the writ of execution does not invalidate the writ nor, in the absence of any evidence of actual confusion, relieve any party of its duty to comply therewith. *See Da–Green Elec., Ltd. v. Bank of Yorba Linda,*

891 F.2d 1396, 1399 (9th Cir.1989) ("In light of [the Bank's actual knowledge of the identity of the party named in the writ of execution], the inclusion of 'Inc.' in the writ was a mere technical misdescription ...."); *see also Pace Design & Fab, Inc. v. Stoughton Composites, Inc.,* 936 F.Supp. 599 (E.D.Wis.1996) (granting motion to amend writ of execution to correct clerical error). The writ of execution correctly states the judgment amount and the annual interest percentage and no party appears to have been actually mislead by the clerical error indicating an unreasonably high daily interest amount. Consequently, the error provides no support for TIP's application.

ACCORDINGLY, IT IS ORDERED THAT:

Defendant/Counterclaimant Transport International Pool, Inc.'s Ex Parte Application For Order Quashing Service of Notice of Levy, Memorandum of Garnishee, and Writ of Execution on Burlington Northern and Santa Fe Railway Company is denied.

(E.D.Mich.1989), *abrogated on other grounds by Apostolic Pentecostal Church v. Colbert,* 169 F.3d 409, 415 n. 4 (6th Cir.1999), held that a judgment debtor could properly challenge the method of service employed by a judgment creditor in serving several writs of garnishment on third parties. The *Pauly* Court, however, relied explicitly on two Michigan Court Rules authorizing such a challenge in reaching this conclusion, and did not consider the more general principles of federal standing law discussed above. *See id.* at 925 ("In light of these two provisions [of Michigan Law], any conclusion that [defendant] lacks standing to object to the writs of garnishment would be a non [sequitur].''). Defendants do not suggest that California has any provision of law similar to the Court Rules found dispositive in *Pauly.* Moreover, in light of the Ninth Circuit's clear holding that "Rule 4.1 [of the Federal Rules of Civil Procedure] directs who shall make service [of a notice of levy],'' *Hilao v. Estate of Marcos,* 95 F.3d 848, 853 (9th Cir.1996), and in consideration of

the fact that federal court standing is an issue of federal law, *see Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 537–40 (3rd Cir.1994) (even in diversity action removed to federal court, " '[s]tanding to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court") (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985)), the Court believes that California law does not control on this question. The issue of TIP's standing to object to service here presents a question of federal law. *See Federal Deposit Ins. Corp. v. Main Hurdman,* 655 F.Supp. 259, 264 (E.D.Cal.1987) ("To the degree that a party must have standing by virtue of Article III, the federal character of the question is self-evident. Again, because the questions of prudence relate to the propriety of a federal court exercising the power the Constitution and Congress [have] accorded it, the questions are peculiarly federal in character").